UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| KATHY SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:17 CV 7 ACL |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM**

Plaintiff Kathy Smith brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Smith's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform past relevant work as a billing clerk.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded.

## I. Procedural History

Smith filed applications for DIB and SSI on December 9, 2013, claiming that she became

unable to work on October 15, 2013, because of breast cancer, arthritis in the lower back and right hip, high blood pressure, high cholesterol, and a history of double mastectomy. (Tr. 143-56.) Smith was 55 years of age on her alleged onset of disability date. *Id.* Her claims were denied initially. (Tr. 85-89.) Following an administrative hearing, Smith's claims were denied in a written opinion by an ALJ, dated November 19, 2015. (Tr. 13-21.) Smith then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on November 21, 2016. (Tr. 7, 1-5.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Smith argues that the ALJ erred "by failing to provide a proper RFC in that the ALJ did not adequately evaluate the opinion of the treating physician and did not support the credibility assessment with substantial evidence." (Doc. 9 at 7.)

## II. The ALJ's Determination

The ALJ first noted that Smith met the insured status requirements of the Social Security Act through September 30, 2018, and has not engaged in substantial gainful activity since October 15, 2013, her alleged onset date. (Tr. 15.)

In addition, the ALJ concluded that Smith had the following severe impairments: degenerative disc disease-back; degenerative joint disease-hip; and history of breast cancer. The ALJ found that Smith did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 17.)

As to Smith's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)(sit for 6 of 8 hours in a work day; stand for 2 of 8 hours

>    in a work day; lift and/or carry 10 pounds frequently or
>    occasionally) except she can frequently climb ramps and stairs, and
>    can frequently stoop. She can only occasionally climb ladders,
>    ropes, and scaffolds.

*Id.*

The ALJ found that Smith's allegations regarding the extent of her limitations were not entirely credible. (Tr. 18.) In determining Smith's RFC, the ALJ indicated that he was assigning "significant weight" to the opinions of treating physician Philma Opinaldo, M.D. (Tr. 20.)

The ALJ further found that Smith was capable of performing past relevant work as a billing clerk. (Tr. 21.) The ALJ therefore concluded that Smith was not under a disability, as defined in the Social Security Act, from October 15, 2013, through the date of the decision. *Id.*

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability
> insurance benefits filed on December 9, 2013, the claimant is not
> disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income filed on
> December 9, 2013, the claimant is not disabled under section
> 1614(a)(3)(A) of the Social Security Act.

*Id.*

### III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial

evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a

whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that

would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental

limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a,

416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

As previously stated, Smith challenges the ALJ's weighing of the treating physician opinion and credibility analysis in determining Smith's RFC. Because the ALJ erred in weighing the treating physician's opinion regarding Plaintiff's physical impairments in reaching his RFC determination, the Court will address that issue alone.

Smith argues that the ALJ erred in providing "significant weight" to the opinion of Dr. Opinaldo, but omitting two limitations contained in Dr. Opinaldo's opinion without explanation. She contends that, had the ALJ included these limitations, he would have found Smith disabled pursuant to the Medical Vocational Guidelines.

Dr. Opinaldo completed a Physical Capacities Evaluation on September 25, 2014, in which she expressed the opinion that Smith could sit for one hour at a time, and sit a total of three hours in an eight-hour workday; stand or walk less than one hour at a time and a total of one hour in an eight-hour day; occasionally lift and carry up to nine pounds; occasionally bend, squat, crawl, and climb; had severe restrictions in exposure to unprotected heights, moving machinery and marked changes in temperature; and moderate restrictions in driving automotive equipment, and exposure to dust, fumes, and gases. (Tr. 551-52.) Dr. Opinaldo found that Smith was capable of using her hands for simple grasping, pushing and pulling and fine manipulation; but could not use her hands for repetitive motion tasks such as writing, typing, or assembly. (Tr. 551.) She further found that Smith had severe psychosocial restrictions, which precluded all job tasks except low-stress, low-skilled tasks that do not require working with the public. (Tr. 552.)

The ALJ discussed Dr. Opinaldo's opinion. (Tr. 19.) He accurately set out the limitations found by Dr. Opinaldo, except he stated that Smith "had no hand limitations." *Id.* The ALJ then indicated that he was assigning "significant weight" to "most limitations" found by Dr. Opinaldo. (Tr. 20.) He explained:

> The claimant is found to be able to complete a full 8 hour day, which was not suggested by Dr. Opinaldo, but there is no medical evidence to support such extreme limitations in the claimant's ability to sit, stand, or walk. The claimant has been limited to 10 pounds in keeping with the suggestion of Dr. Opinaldo. The postural limitations of Dr. Opinaldo have generally been followed.

(Tr. 20.)

Dr. Opinaldo was Smith's treating physician. Generally, the Commissioner gives more weight to the opinion of a source who has examined a claimant than a source who has not. 20 C.F.R. § 419.927(c)(1). When the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. *Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2012) (citing 20 C.F.R. § 404.1527(c)(2)). An examining physician's opinion, however, neither inherently or automatically has controlling weight and "does not obviate the need to evaluate the record as a whole." *Cline v. Colvin,* 771 F.3d 1098, 1103 (8th Cir. 2014) (internal quotations and citations omitted).

"An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir. 2010) (internal quotation omitted). Moreover, "[a]n ALJ is entitled to give less weight to the opinion of a treating doctor where the doctor's opinion is based largely on the plaintiff's subjective complaints rather than on objective medical evidence." *Rosa v. Astrue,* 708 F. Supp.2d 941, 950 (E.D. Mo. 2010); *see also Davis v. Shalala,* 31 F.3d 753, 756 (8th Cir. 1994); *Loving v. Dep't Health & Human Serv.,* 16 F.3d 967, 971 (8th Cir. 1994). An ALJ may not substitute his own opinions for the opinions of medical professionals. *Ness v. Sullivan,* 904 F.2d 432, 435 (8th Cir. 1990); *see also Pate-Fires,* 564 F.3d at 946-47 (instructing that ALJs may not "play doctor"). However, an ALJ "need not adopt the opinion of a physician on the ultimate issue of a claimant's ability to engage in substantial gainful employment." *Qualls v. Apfel,* 158 F.3d 425, 428 (8th Cir. 1998) (internal quotations and

citations omitted). Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2).

Dr. Opinaldo treated Smith from at least October 2013 through September 2015 for epigastric pain, chest pain, low back pain, shoulder pain, right arm pain, neck pain, and knee pain. (Tr. 551-604, 610-30, 639-60.) Dr. Opinaldo noted that Smith had a history of right breast cancer, for which she underwent a double mastectomy and finished chemotherapy in May of 2014. (Tr. 559.) Smith also had a past surgical history of right and left carpal tunnel release. *Id.* On physical examinations, Dr. Opinaldo consistently noted findings such as tenderness and muscle spasm of the cervical, thoracic, and lumbar spine; tenderness and decreased range of motion of the acromioclavicular and shoulder joints; trace edema of the ankles bilaterally; and crepitant knee joints. (Tr. 560, 583, 587, 617, 624, 640, 646, 650.) She diagnosed Smith with degenerative disc disease and degenerative joint disease, and prescribed pain medication. *Id.*

Smith argues that the ALJ erred in misstating Dr. Opinaldo's opinion regarding Smith's use of her hands and in failing to include this limitation in Smith's RFC. The undersigned agrees. Although Dr. Opinaldo found that Smith had no limitations in her ability to perform simple grasping, pushing and pulling, she concluded that Smith was unable to use her hands for "repetitive motion tasks (writing, typing, assembly, etc.)" due to "carpal tunnel" and "trigger finger." (Tr. 551.) The ALJ erroneously stated that Dr. Opinaldo found Smith had "no hand limitations." (Tr. 19.)

Defendant contends that the ALJ "was likely referring to the fact that Dr. Opinaldo checked boxes indicating Plaintiff could use her hands adequately for simple grasping, pushing, pulling, and fine manipulation." (Doc. 19 at 8.) Defendant notes that consultative physician "Dr. Kim found no problems with Plaintiff's handgrip or fine finger movements." *Id.*

Defendant concludes that "between Dr. Opinaldo's opinion that Plaintiff could use her hands adequately for grasping and fine manipulation and Dr. Kim's examination showing no problem with Plaintiff's handgrip or fine finger movements, substantial evidence supports not including any hand limitations in the RFC." *Id.*

Defendant's argument lacks merit. The fact that Drs. Opinaldo and Kim found Smith's grasping and fine manipulation abilities adequate does not speak to Smith's ability to use her hands for repetitive motion tasks. The ALJ did not indicate he disagreed with Dr. Opinaldo's opinion on this issue but, rather, did not address the opinion at all. Dr. Opinaldo explained that Smith was limited in her ability to use her hands repetitively due to carpal tunnel syndrome and trigger finger. Dr. Opinaldo's records reveal that Smith underwent right and left carpal tunnel release surgery. (Tr. 559, 586.) In addition, Dr. Opinaldo frequently noted Smith's complaints of right arm pain and tenderness and decreased range of motion of the acromioclavicular and shoulder joints. Imaging of Smith's shoulders in September 2014 revealed bilateral acromioclavicular joint osteoarthritis and degenerative narrowing of the right glenohumeral joint. (Tr. 572.) Under these circumstances, it cannot be found that the ALJ provided "good reasons" for rejecting Dr. Opinaldo's opinion.

This error was not harmless, as the ALJ found at step four that Smith could perform her past work as a billing clerk, as generally performed. (Tr. 21.) When questioned by Smith's attorney about the attention required for this position, the vocational expert testified as follows:

> It's a job that—that requires close attention to detail. And it's constant. It's a—you know, if you look at that, you know, one of the factors you can look at here is it's constant fingering. So if you're not staying on task you're not going to meet employment goals or be able to deliver that kind of accuracy.

(Tr. 55.) Consistent with the vocational expert's description of this position, Smith testified that she used her hands "constantly" at her billing clerk position. (Tr. 35.) She further testified that

she would be unable to return to this position because she would not be able to "keep up at one repetition activity" due to her right arm impairment. (Tr. 49.) Smith argues that, had the ALJ included a limitation that Smith was unable to perform repetitive motion tasks with either hand consistent with Dr. Opinaldo's opinion, not only would Smith be unable to perform her past work but the ALJ would have found her disabled pursuant to the Medical Vocational Guidelines. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.06.

The ALJ erred by mischaracterizing Dr. Opinaldo's finding regarding Smith's limitations and then failing to address Smith's ability to use her hands repetitively. An ALJ is required to weigh all medical source opinions and "always give good reasons for the weight given to a treating source's opinion." SSR 96-2p, 1996 WL 374188 at *5 (Soc. Sec. Admin. July 2, 1996). Further, an ALJ must explain why an opinion from a medical source was not adopted. SSR 96-8p, 1996 WL 374184 at *7 (Soc. Sec. Admin. July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). *See Trotter v. Colvin*, 2015 WL 5785548, at *3 (W.D. Mo. Oct. 2, 2015) (remand was required when the ALJ gave the opinion weight but did not provide any explanation for omitting portions of the opinion); *White v. Astrue*, 2012 WL 930840, at *7 (W.D. Mo. March 19, 2012) (the ALJ erred when the ALJ gave weight to the doctor's opinion but did not include the doctor's limitations in the RFC or explain the omission); *Woods v. Astrue*, 780 F. Supp. 2d 904, 913-15 (E.D. Mo. Jan. 26, 2011) (remand was required when the ALJ provided weight to the treating physician's opinion, but disregarded the physician's limitations without explanation).

Accordingly, remand is required in this case. The Court notes that the record before it does not conclusively establish that Smith is limited as found by Dr. Opinaldo. Rather, remand is

required so that the ALJ can address in the first instance the issue of Smith's ability to use her hands repetitively, obtaining further evidence if necessary, and proceed with the sequential analysis.

### VII. Conclusion

The ALJ erred in analyzing the opinion of the treating physician, resulting in an RFC determination that was not supported by substantial evidence on the record as a whole. The hypothetical question to the vocational expert was based on this erroneous RFC. Thus, the vocational expert's answer does not constitute substantial evidence supporting the Commissioner's denial of benefits. The matter will, therefore, be remanded for further consideration.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of March, 2018.